RIEDEN v. RIEDEN.

1. DIVORCE—CROSS-BILL—EVIDENCE—SUFFICIENCY.
   On appeal by a husband from a decree granting a divorce
   to the wife upon her cross-bill, evidence *held*, sufficient
   to entitle plaintiff to a decree on the grounds of extreme
   cruelty.

2. SAME—ALIMONY—MODIFICATION OF DECREE.
   Where the court found that plaintiff's property was worth
   about $14,000, an award to defendant of the homestead,
   worth about $4,500, together with the household furniture
   therein, and $5 a week for the support, maintenance, and
   education of a minor child until she attains the age of
   14 years, will be affirmed; but a further provision that
   plaintiff should furnish defendant an abstract of title of
   said homestead, or pay $50 in lieu thereof is eliminated
   from the decree.

Appeal from Wayne; Perkins, J., presiding. Submitted April 10, 1919. (Docket No. 24.) Decided July 17, 1919.

Bill by Edward Rieden against Loretta Rieden for a divorce. Defendant filed a cross-bill alleging extreme cruelty. From a decree for defendant, plaintiff appeals. Modified, and affirmed.

*James H. Pound*, for plaintiff.

*Edward C. Moran*, for defendant.

STONE, J. The bill of complaint herein for divorce was filed by the plaintiff in the Wayne circuit court, in chancery, on February 14, 1918. The parties were young people, having been acquainted with each other from childhood, and were both residents of the city of Detroit. They were married on June 16, 1915, and lived and cohabited together until about the 13th day of November, 1917, when it is claimed by the

On relation·between one spouse and relatives of the other as affecting the question of cruelty, see notes in 13 L. R. A. (N. S.) 222; 34 L. R. A. (N. S.) 759; L. R. A. 1915E, 161.

On profanity and obscenity as grounds for divorce, as cruel and inhuman treatment, see note in 12 L. R. A. (N. S.) 820.

plaintiff that the defendant deliberately put his clothes out of the house, or home of the parties, while he was away at work earning a living for himself and family. One child was born, a girl, Loretta M., on April 24, 1916. That child is living, and is with the defendant. The bill of complaint charges the defendant with numerous acts of extreme cruelty, personal violence, and an utter disregard of her marital obligations. Among other things it charges that the defendant was, during the period of the marriage, largely under the domination of her mother, and much of the trouble charged in the bill is traceable to the attitude of defendant's parents toward the plaintiff. It is charged that they united with defendant in the use of many epithets, charging the plaintiff, among other things, with being a "dirty Dutch pup," "a Dutch coward," etc. The bill charges the defendant, at different times during June, 1917, with breaking dishes and utensils for housekeeping in her fits of anger. It appears from the bill and evidence that the plaintiff was a contractor and builder at the time of the marriage of the parties; and there seems to have been much difficulty in the conducting of his building business and the selling of lots by the refusal of the defendant to join him in making conveyances of such property. He finally changed his business to that of keeping a barber shop and pool room.

The bill charges that about March 1, 1917, the defendant came to plaintiff's place of business, walked behind the cigar case on the counter, opened a drawer of which she had knowledge, took from the drawer a loaded revolver and pointed it at the plaintiff, and threatened to shoot him unless he came home with her at once—this being in the evening; and it is charged that the defendant terrorized not only the plaintiff, but a number of persons present until she was disarmed by the plaintiff, when her attention was distracted by another person then present.

The answer of defendant is peculiar in that in its denials of the acts of cruelty charged, in nearly every instance it contains what may be termed a negative pregnant, a negative implying an affirmative; that is, while denying the allegations of the bill it generally does so in the exact language charged in the bill. For instance, in denying this allegation, defendant says in her answer:

"Defendant further answering denies that about March 1, 1917, she entered plaintiff's place of business, walked behind the cigar case and opened a drawer of which she had knowledge, took a revolver and pointed it at plaintiff, threatened to shoot him unless he came with her at once, and denies that she terrorized the whole place until she was disarmed by your orator when her attention was distracted by another person then present."

She testified, relating to this subject, that:

"Backing up to the cigar case where the revolver lay on the ledge I pulled it on him.
"Q. Then you had the room all to yourself, did you?
"A. Yes, sir."

She further testified that the revolver was loaded, and also as follows:

"Q. Did you tell those four men that were there that you would shoot any one that made a step towards you?
"A. Yes."

After denying the allegations of the bill in the manner indicated, the answer also contains, by way of cross-bill, many charges of cruelty on the part of the plaintiff, and a large amount of testimony was taken in the case, all of which has been examined. The court below granted a decree to the defendant upon her cross-bill. Plaintiff has appealed.

After reading the testimony of about 25 witnesses examined in the case, we are impressed with the contradictory character of the testimony of the parties,

and their immediate relatives; it being so contradictory that it is entitled to but slight consideration. In view, however, of the testimony of a number of disinterested witnesses, we are constrained to hold that the testimony on behalf of the plaintiff entitled him to a divorce against the defendant upon the grounds of extreme cruelty. The evidence tends clearly to show that the defendant is a woman of violent passion, and that she was guilty of many acts of personal violence and neglect of wifely duty in her conduct toward the plaintiff. There would be no profit in here setting forth that testimony. It is sufficient to say that it shows such a condition of ill-will, if not hatred, between the parties that there is no hope of reconciliation; and we agree with the conclusion reached by the circuit judge, that a decree of divorce should be granted in the case. As this court said in *Utley* v. *Utley,* 155 Mich. at page 259:

"We are impressed that the parties should be relieved of the relations entered upon with their marriage."

We think this divorce should be granted to the plaintiff.

The custody of the little girl, now about three years old, was awarded to the defendant. This part of the decree, in our opinion, should not be disturbed. The care and education of this child is, in our opinion, the most important question to be disposed of. The circuit judge found that the property of the plaintiff, including the homestead, was about $14,000. We think this a pretty high figure from the testimony in the case. The homestead, described as No. 893 Green avenue, Detroit, was owned by the parties as tenants by the entireties, the title having been so placed in the lot soon after the marriage, which property seems to be worth, by the undisputed evidence, in the neighborhood of $4,500. The court below awarded this property to the defendant, together with

the household furniture therein; and the decree further provided for the payment by the plaintiff to the defendant of the sum of $5 each and every week for the care, support, maintenance and education of the said minor child, Loretta M. Rieden, until she attains the age of 14 years, or until the further order of the court, and that the plaintiff should have the right to see and visit the child once each week if he so desired. It directed a conveyance of the interest of the plaintiff to the defendant in this property.

If this child is to have proper support, education and maintenance, it is desirable that the defendant shall have a home for the purpose of performing these duties to the child. We are not disposed to disturb this part of the decree. The court below, however, after directing a conveyance of plaintiff's interest in this property to the defendant, provided that he should furnish her with an abstract of title of said premises within a limited period, and that in default thereof he should pay her $50 in lieu of said abstract. We think this provision should be eliminated from the decree. The decree properly provides that upon the performance of these conditions, all right of dower which the defendant may have in and to any of the plaintiff's property owned or hereafter acquired by him, should be barred forever. This provision will be retained in the decree.

The record shows that there had been paid to the defendant as temporary alimony $10 per week pending the suit, and also $30 attorney's fee. The final decree also awarded defendant's attorney the sum of $150 as an attorney fee in the case. In this court, a petition for the allowance of expenses on account of the appeal having been filed, we made an order allowing the defendant $50 on account of expenses. The plaintiff has printed the record, and we think that, in view of the liberal award made in the court below as

an attorney fee, and the order made in this court, and under the circumstances of the case, no additional award of costs should be made to the defendant.

The decree below as thus modified will be affirmed, without further costs.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.